IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WINONA G., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 22-cv-0178 <br><br> Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff Winona G.[2] filed this action seeking a reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act) and a remand for further proceedings. [1]. For the reasons stated below, Plaintiff's motion for summary judgment [9] is granted, and the Commissioner's motion for summary judgment [14] is denied. The case is remanded for further proceedings consistent with this opinion.

### I. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits in May 2014, alleging that she became disabled on May 3, 2013. [8-1] at 138.[3] The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a

---

[1] Frank Bisignano has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[2] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[3] The Court uses the CM/ECF page numbers on the filings.

hearing. (*Id.*). On June 19, 2017, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge (ALJ) Melissa Santiago. (*Id.*). On October 2, 2017, the ALJ determined that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act. (*Id.* at 138-46). After Plaintiff appealed the decision, the Appeals Council remanded the case and directed the case to be assigned to a new ALJ for a new hearing and new decision to cure any Appointments Clause defect. (*Id.* at 154). On July 19, 2021, Plaintiff, represented by counsel, testified at a hearing before ALJ Janet Akers (*Id.* at 20).[4] The ALJ also heard testimony from Diamond Warren, an impartial vocational expert (V.E.). (*Id.*). On August 4, 2021, the ALJ determined that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act. (*Id.* at 20-30) (ALJ decision).

Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff engaged in substantial gainful activity from approximately October 2013 through March 2014, and indicated the remaining findings would address the period the claimant did not engage in substantial gainful activity after March 2014. (*Id.* at 22-23). At step two, the ALJ found that Plaintiff had the following severe impairments: spinal stenosis, lumbar radiculopathy with a history of compression fracture, arthritis of the wrist, obesity, and hypertension. (*Id.* at 23). Though the record contained diagnoses of hyperlipidemia and asthma, the ALJ found they were adequately controlled with conservative treatment. (*Id.*). The ALJ also noted that Plaintiff started alprazolam in November 2014 but received no further treatment for

---

[4] "ALJ" refers to ALJ Akers unless noted otherwise.

anxiety symptoms and denied anxiety symptoms in examinations. (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the enumerated listings in the regulations. (*Id.* at 23-24). In reaching this conclusion, the ALJ considered the opinions of the state agency medical consultants. (*Id.* at 23). The ALJ noted that no opinions from medical sources indicated that Plaintiff's impairments met or equaled a listing. (*Id.*). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[5] and determined that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:

> occasional climbing ramps and stairs, but never ladders, ropes, and scaffolds; occasional balancing, kneeling, crouching, crawling; frequent handling bilaterally; frequent reaching in all directions bilaterally.

(*Id.* at 24). The ALJ indicated that in making this finding, she considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. (*Id.*). The ALJ also stated that she considered the opinion evidence in accordance with the requirements of 20 CFR 404.1527. (*Id.*). In the ALJ's assessment, Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms but Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms could not reasonably be accepted as consistent with

---

[5] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a).

the medical evidence and other evidence in the record. (*Id.* at 25).

At step four, the ALJ determined that Plaintiff could perform past relevant work as a security officer supervisor. (*Id.* at 29-30). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (*Id.* at 30). The Appeals Council denied Plaintiff's request for review. (*Id.* at 7-9). Plaintiff seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Section 405(g) of the Act authorizes judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). Courts may not engage in their own analysis of whether the plaintiff is disabled, nor may they "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [their] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "The ALJ's decision will be upheld if supported by 'substantial evidence.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014)). The Supreme Court has stated that "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In addition, the ALJ must "explain his analysis of the evidence with enough

detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). Courts accord great deference to the ALJ's determination, but "must do more than merely rubber stamp the [ALJ]'s decision []." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (alterations in original) (quoting *Erhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)). The deferential standard "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "Rather, it is up to the ALJ to articulate the relevant evidence and explain how that evidence supports her ultimate determination." *Noonan v. Saul*, 835 F. App'x 877, 880 (7th Cir. 2020). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Courts may also reverse and remand the decision "if the ALJ committed an error of law or based her decision on serious factual mistakes or omissions." *Judy M. v. Kijakazi*, No. 21 C 2028, 2023 WL 2301448, at *3 (N.D. Ill. Feb. 28, 2023) (citation omitted). If substantial evidence supports the ALJ's decision and reasonable minds could disagree on whether a claimant is disabled, the court must affirm the Commissioner's decision. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

### III. DISCUSSION

In her request for reversal and remand, Plaintiff makes several arguments

challenging the ALJ's decision. After reviewing the record and parties' briefs, the Court is persuaded by Plaintiff's argument that the ALJ erred in evaluating the medical opinion of Plaintiff's treating orthopedic surgeon. [9] at 9-10.[6]

### A. The ALJ did not properly assess Dr. Sokolowski's opinion.

For claims – like this one – that were filed prior to March 27, 2017, the treating physician rule requires an ALJ to give a treating physician's opinion controlling weight "if it is well-supported and not inconsistent with other substantial evidence." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *see also Luster v. Astrue*, 358 Fed.Appx. 738, 740 (7th Cir. 2010). An ALJ must offer "good reasons" for discounting a treating physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Here, the ALJ improperly discounted the April 2017 opinion of Dr. Mark Sokolowski, an orthopedic surgeon who treated Plaintiff off and on between March 2014 and June 2021. [8-1] at 716; [8-2] at 448. On February 13, 2017, Dr. Sokolowski opined that Plaintiff could lift and carry less than 10 pounds, stand and walk less than two of eight hours, and sit less than two of eight hours. [8-1] at 901-02.[7] Dr. Sokolowski also indicated that Plaintiff must alternate between a sitting and standing position, and that Plaintiff would miss more than four days per month of work. (*Id.*). The ALJ gave "little weight" to this opinion but did not give "good reasons" for doing so. *See Campbell*, 627 F.3d at 306. The Court analyzes each of the ALJ's

---

[6] Because the Court remands on this basis, it does not address Plaintiff's other arguments at this time unless otherwise noted.

[7] The ALJ refers to this opinion as having been written in April 2017, but that appears to be incorrect. [8-1] at 28, 902-04.

reasons for discounting Dr. Sokolowski's opinion below.

First, the ALJ referenced the consultative examination that took place in September 2015 and stated that examination found that Plaintiff "could sit, stand and walk greater than 50 feet unassisted with only mild to moderate limitations." [8-1] at 28. It appears the ALJ thought this consultative examination medical evidence was inconsistent with Dr. Sokolowski's opinion that Plaintiff could stand and walk less than two of eight hours. However, the consultative examiner only asked Plaintiff to walk 50 feet, (*id.* at 807), and 50 feet is a far shorter distance than the "good deal of walking" that can be required by light work as defined in 20 CFR 404.1567(b), *see Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("[The doctor] noted that [the plaintiff] successfully walked 50 feet without a cane within the confines of her office, but that brief excursion hardly demonstrates an ability to stand for 6 hours.").

Second, the ALJ referred to an independent medical examination completed in July 2014 by Dr. Steven Mather where Dr. Mather found Plaintiff required no further testing or treatment, Plaintiff's pain complaints could not be corroborated by MRI testing or physical examination, her pain complaints and examination findings varied from practitioner to practitioner, and that Plaintiff had multiple positive Waddell findings, which indicated likely nonorganic pain. (*Id.* at 28). In December 2014—after Dr. Mather's examination—Plaintiff completed an MRI that indicated that Plaintiff had a "large disc protrusion at L3-4 to the left of midline deformity of the thecal sac and encroaching on the neural foramen" that was not seen on prior imaging from June 11, 2013. (*Id.* at 697). The ALJ did not indicate why Dr. Mather's conclusions

still provided a substantial basis for discounting Dr. Sokolowski's opinion despite Dr. Mather lacking this information. In addition, Dr. Mather stated in his opinion that the "care and treatment by Dr. Sokolowski does not appear to be related to this claim as she healed her lumbar compression fracture long before he saw her." [8-2] at 125. The ALJ did not clarify how this observation impacted Dr. Mather's opinion and whether Dr. Mather did not consider certain medical information given that he thought Dr. Sokolowski's care and treatment was outside the scope of his review. The ALJ was tasked with determining if Plaintiff was disabled between March 2014 and March 2018, not just assessing the impact from the compression fracture. Dr. Mather appeared to limit his assessment to the compression fracture.

Third, the ALJ referred to a functional capacity evaluation that occurred in April 2015 that, according to the ALJ, indicated that while Plaintiff "demonstrated the physical capabilities to function at the medium physical demand level, [Plaintiff] had variable performance/questionable effort and [Plaintiff] could have performed at higher levels than willing." [8-1] at 28. Though minor, it is worth clarifying that the report stated that Plaintiff "*likely* could have performed at higher levels than willing during musculoskeltal and functional testing." (*Id.* at 835) (emphasis added). In addition, the ALJ did not discuss several comments in the report about Plaintiff's ability to stand, walk, and sit that were consistent with Dr. Sokolowski's opinion. The report stated that Plaintiff's demonstrated and projected physical tolerances included *occasional* sitting and *occasional* standing. (*Id.* at 835-36) (emphasis added). In addition, the comments from the report stated that Plaintiff "demonstrated sustained

sitting tolerances from 1-42 minutes x 13 interval with mild to moderate difficulty noted. [Plaintiff] demonstrated weight shifts while seated, extended trunk and leg posturing and intermittent extension of her low back while seated." (*Id.* at 842). The report also stated that Plaintiff "demonstrated dynamic standing tolerances from 0-32 minutes x 13 intervals with moderate difficulty noted, as evidenced by frequent leaning against equipment and sitting directly after each resistive task." (*Id.*). The report notes that during a driving simulation, Plaintiff demonstrated discomfort at her lower back at approximately the six-minute mark and soreness at her lower back at the ten-minute mark, and that Plaintiff stopped the simulation at the twelve-minute mark to get out of the seated posture. (*Id.* at 845). The ALJ was not permitted to cherry-pick from mixed results to support a denial of benefits. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (finding that an ALJ cannot "cherry pick" a treatment provider's file "to locate a single treatment note that purportedly undermines [the] overall assessment of [plaintiff]'s functional limitations").

Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she still must decide what weight to give that opinion. *Campbell*, 627 F.3d at 308. In making this decision, the ALJ must consider a variety of factors, including: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018), *amended on reh'g* (Aug. 30, 2018) (quoting *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)); *see* 20 C.F.R. § 404.1527(c)(2)-(6).

Here, the ALJ failed to address several of the enumerated factors provided in 20 C.F.R. § 404.1527. For example, the ALJ did not acknowledge Dr. Sokolowski's specialty in orthopedics, which would support favoring his opinion over the opinions of non-specialists. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). The ALJ also did not discuss the support for Dr. Sokolowski's opinion in the medical record. The ALJ's failure to sufficiently account for the factors in 20 C.F.R. § 404.1527 prevents the Court from determining the reasonableness of the ALJ's decision considering these factors.

In sum, the Court finds that the ALJ did not offer substantial evidence for giving little weight to Dr. Sokolowski's February 2017 opinion, which is an error requiring remand. On remand, the ALJ shall properly weigh Dr. Sokolowski's medical opinions and explicitly consider and address the factors set forth in 20 C.F.R. § 404.1527(c). The ALJ shall then re-evaluate Plaintiff's impairments and RFC, considering all of the evidence and testimony of record, and shall explain the basis of her findings in accordance with applicable regulations and rulings. With the assistance of a V.E., the ALJ shall determine whether Plaintiff can perform past relevant work and, if not, whether there are jobs that exist in significant numbers that Plaintiff can perform.

## B. ALJ Akers can oversee the re-hearing.

Plaintiff argues that ALJ Akers was required to render a de novo decision but

ALJ Akers read and relied on ALJ Santiago's opinion in violation of *Lucia v. Securities and Exch. Comm'n*, 585 U.S. 237 (2018) and, as a result, the case should be remanded and a new ALJ should be assigned to the case. [9] at 14-15; [16] at 10-11. The Supreme Court in *Lucia* determined that the appropriate remedy for an SEC adjudication tainted with an Appointments Clause violation is a new hearing before a properly appointed official. *Lucia v. Securities and Exch. Comm'n*, 585 U.S. 237, 239 (2018). *Lucia* did not address the question at issue here, which is whether an ALJ reviewing a case de novo is permitted to reference an observation from the original ALJ who ruled on the case or copy language from the original ALJ ruling.

"A *de novo* decision is an independent determination *made without deference to prior findings.*" *Anthony L. v. Berryhill*, No. 17-cv-6608, 2019 WL 1354419, at *7 (N.D. Ill. Mar. 26, 2019) (emphasis added). After reviewing ALJ Santiago's and ALJ Akers's opinions, the Court found several places where ALJ Akers's observations about the record and conclusions were the same as in ALJ Santiago's opinion. However, the Court also found several places where ALJ Akers's observations and findings differed. For instance, ALJ Akers found additional severe impairments, assigned Dr. Sokolowski's assessment that Plaintiff would be restricted permanently "some weight" where ALJ Santiago did not discuss the opinion, and, unlike ALJ Santiago, found that Plaintiff engaged in substantial gainful activity between October 2013 and March 2014. [8-1] at 22-23, 28. There is no indication that ALJ Akers believed she was required to defer to ALJ Santiago's conclusions. *See Ridenour v. Comm'r of Soc. Sec.*, No. CV 20-13272, 2022 WL 565583, at *2 (E.D. Mich. Feb. 24,

2022). In addition, ALJ Akers did not copy and paste the entire opinion. *See Holly M. v. Dudek*, No. 23-CV-17007, 2025 WL 933875, at *2 (N.D. Ill. Mar. 27, 2025) ("[The] August 23, 2023 decision is a nearly verbatim cut-and-paste job from the earlier ALJ's January 6, 2020 decision until Step Five where she completes a new analysis comprising only the last three pages of her twenty-four-page decision.").[8] ALJ Akers completed a *de novo* review that was not tainted by any Appointments Clause violation. ALJ Akers can hear the case upon remand.

## IV. CONCLUSION

For these reasons, Plaintiff's request to remand for additional proceedings [9] is **GRANTED**, and the Commissioner's motion for summary judgment [14] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: May 20, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[8] Plaintiff filed a notice of supplemental authority about *Cody v. Kijakazi*, 48 F.4th 956 (9th Cir. 2022). [21]. *Cody* is distinguishable from this case because *Cody* involved an ALJ who issued two opinions—one before she was properly appointed and one after she was properly appointed—and the ALJ copied and pasted sections from her original opinion into the opinion she issued after she was properly appointed. *Cody v. Kijakazi*, 48 F.4th 956, 962–63 (9th Cir. 2022) ("[Plaintiff] must receive a new decision by a different ALJ because [the] ALJ . . . issued both the 2017 and 2019 decisions.").